COURT OF APPEALS
DECISION
DATED AND FILED

September 3, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1103-CR**

Cir. Ct. No. 2021CF1972

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT,

V.

ADAM C. SHOCK,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Waukesha County: MICHAEL O. BOHREN, Judge. *Reversed.*

Before Gundrum, Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The State of Wisconsin appeals from a circuit court order suppressing evidence obtained pursuant to a search warrant for the house of the defendant, Adam C. Shock, after a DNA match implicated Shock in a sexual assault. The search warrant affidavit indicated a probability that the alleged victim had been drugged by Shock in order to carry out the sexual assault. Our analysis on appeal comes down to whether, when the omitted fact that the alleged victim's urinalysis was negative for the presence of drugs approximately twelve hours after the assault is included in the warrant affidavit, the affidavit was sufficient to establish probable cause to support the issuance of the warrant. We conclude that it was and reverse the order of the circuit court.

## BACKGROUND

¶2 The facts pertinent to this appeal are not in dispute.

¶3 In Spring 2021, Allison[1] went to a police department to report that she had been sexually assaulted in a Waukesha hotel room and believed that she had been drugged in connection to the assault. Allison had met up with the alleged perpetrator three times before the assault, but he had presented her with a fake name. When DNA from Allison's sexual assault kit came back as a match to Adam C. Shock, the detective assigned to Allison's case filed for a warrant to search Shock's residence for specific items that may have been used in the assault, including several varieties of illicit drugs.

---

[1] We use a pseudonym to protect the victim's privacy. *See* WIS. STAT. RULE § 809.86(4) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

¶4      A circuit court judge issued a search warrant for Shock's residence after determining the detective's supporting affidavit established the requisite probable cause. During their search of Shock's house, police found various sex toys, THC, methamphetamine, and a bottle each of isoflurane and a euthanasia solution that were labeled for use with dogs. Police learned that the last two items, which Shock claimed to have found, are used to euthanize animals and could only be obtained by someone with a veterinary license. The warrant and resultant search led to charges against Shock for both second-degree and third-degree sexual assault, as well as for the unlawful possession of narcotics, THC, and methamphetamine.

¶5      As relevant to this appeal, the detective swore in his affidavit that: he "learned that Shock wanted [Allison] to try what he described as [E]cstasy, but [Allison] refused;" "[Allison] explained that she felt like she had at least 6 drinks but was only on her second drink when she felt this way;" "[Allison] suspects that Shock put drugs in her drink to assault her while she slept;" and "[Allison] became ill and vomited in the conference room garbage can" likely because "[Allison] may still be feeling the effects of the drugs that Shock gave to [her] without her consent." Although the detective had apparently already received Allison's medical records, he did not review the records before filing for the warrant. The detective thus neglected to include the fact that the urinalysis results from a sample taken from Allison approximately twelve hours after the sexual assault was negative for the presence of the drugs the warrant indicated would be found in Shock's house.

¶6      During pretrial proceedings, the State submitted an expert opinion from a doctor indicating that either of the veterinary drugs found in Shock's house could have been used to facilitate a sexual assault and produce the effects Allison

3

reported. The doctor also opined that the two veterinary drugs, and certain other sedatives, would not show up on a toxicology screen. After the circuit court denied his motion to exclude the expert, Shock moved to suppress all of the evidence found in his house. As relevant to this appeal, Shock alleged a *Franks*/*Mann*[2] violation because the warrant affidavit did not state that drugs were not detected in Allison's urine.

¶7 The circuit court held an evidentiary hearing on Shock's suppression motion. The court concluded that the failure to include the negative urinalysis results in the search-warrant affidavit was a reckless omission of a material fact. The court found that if the negative urinalysis results were included in the affidavit, the warrant lacked probable cause to establish that the drugs specified in the search would be located in Shock's house. The court therefore suppressed all evidence found at the house and granted Shock's motion to dismiss the three possession of illicit drugs counts in light of the evidence being suppressed. The State appeals.

## DISCUSSION

¶8 "The Fourth Amendment of the United States Constitution guarantees that persons shall be secure from 'unreasonable searches and seizures and sets forth the manner in which warrants shall issue.'" *State v. Sveum*, 2010 WI 92, ¶18, 328 Wis. 2d 369, 787 N.W.2d 317 (citation omitted). A constitutionally valid warrant requires "[a] demonstration upon oath or affirmation

---

[2] *See* **Franks v. Delaware**, 438 U.S. 154 (1978), and **State v. Mann**, 123 Wis. 2d 375, 367 N.W.2d 209 (1985).

that there is probable cause to believe that evidence sought will aid in a particular conviction for a particular offense[.]" *Id.*, ¶20.

> In deciding whether probable cause exists for the issuance of a search warrant, the reviewing court examines the totality of the circumstances presented to the warrant-issuing [judge] to determine whether [he or she] had a substantial basis for concluding that there was a fair probability that a search of the specified premises would uncover evidence of wrongdoing.

*State v. Romero*, 2009 WI 32, ¶3, 317 Wis. 2d 12, 765 N.W.2d 756. In other words, all that is required is a showing of a fair probability that evidence of a crime will be found at a specific place. *See State v. Ward*, 2000 WI 3, ¶¶23, 27, 231 Wis. 2d 723, 604 N.W.2d 517.

¶9 Here, Shock brought a *Franks*/*Mann* challenge to the validity of the search warrant. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978) (recognizing challenge to search warrant on claim that the warrant application included a false statement that was made deliberately or with reckless disregard for the truth, where the statement was necessary to finding of probable cause); *see also State v. Mann*, 123 Wis. 2d 375, 388, 367 N.W.2d 209 (1985) ("[A]n omitted fact [is] the equivalent of 'a deliberate falsehood or a reckless disregard for the truth'" if it is "an undisputed fact that is critical to an impartial judge's fair determination of probable cause." (citation omitted)). If a defendant establishes that the search warrant application included false information or omitted material information, either deliberately or with reckless disregard for the truth, the circuit court must assess probable cause after that information is corrected or included. *See Franks*, 438 U.S. at 155-56; *Mann*, 123 Wis. 2d at 388-89. We independently review whether the warrant application establishes probable cause after

5

*Franks*/*Mann* corrections or inclusions. *See State v. Manuel*, 213 Wis. 2d 308, 315, 570 N.W.2d 601 (Ct. App. 1997).

¶10 The State argues that even had the negative urinalysis results been included, it would not have negated the reasonable probabilities that Allison had been drugged and the drugs used would be found in Shock's house. Citing to *Mann*, the State asserts the negative results are not "critical to a probable cause determination," explaining that "the mere fact that there is more than one inference that could be drawn from the facts stated does not make the affidavit insufficient." *See Mann*, 123 Wis. 2d at 387-88. Shock, on the other hand, maintains that if the "affidavit was supplemented with the existence and results of the urine drug test, the affidavit no longer established probable cause that the drugs listed in the warrant would be found by searching … Shock's house." We agree with the State.

¶11 As we now explain, based on our independent review of the law as applied to these facts, we conclude that even considering the additional fact that Allison's urinalysis results were negative, the warrant itself was sufficient to establish probable cause that Shock had drugged Allison and the drugs Shock used would be found in his house. A reasonable magistrate knows that a urinalysis does not test for everything, that tests are not always accurate, and that all drugs are only detectable for a finite period of time after ingestion.

¶12 The facts stated in the warrant affidavit provided a commonsense, reasonable inference that Allison was drugged which provided probable cause for the search of Shock's house for drugs even if the negative urinalysis results would have been included. *See State v. Weber*, 2016 WI 96, ¶20, 372 Wis. 2d 202, 887 N.W.2d 554 (explaining "probable cause eschews technicality and legalisms in

favor of a 'flexible, common[ ]sense measure of the plausibility of particular conclusions about human behavior.'" (citations omitted)). The detective swore in the affidavit that he learned from Allison's reports to law enforcement that when Allison emerged from the shower, Shock had already prepared her a drink, meaning that Shock could have put something in the drink while Allison was out of the room. Allison's reports further indicated that after that single drink, she had to use "the wall to support her balance and felt that the effects of the alcohol were stronger than expected unless there were drugs in them." Allison also reported that Shock kept urging her to use what he described as "[E]cstasy" with him, but Allison refused. In addition, Allison told law enforcement Shock penetrated her vagina with a Sprite bottle and continued even after she repeatedly told him to stop; Shock told Allison his "kink" was having sex with a sleeping person and kept urging Allison to go to sleep; and Allison felt far more intoxicated than would be normal for the amount she had to drink; and she "suspect[ed] that Shock put drugs in her drink to assault her while she slept." The affidavit further averred that the detective learned that Allison vomited in the garbage can at the police station while furnishing this report to officers, who believed Allison vomited because she still may have been affected by any drugs Shock gave her without her consent.

¶13    Moreover, the detective testified that the negative urinalysis results did not change his evaluation of the facts or his belief that he had probable cause to seek a search warrant, which he still would have sought. The detective testified that if he would have known about the test result when drafting the affidavit, he would have included it. He would have further explained in the affidavit that, based on his training and experience, he would not expect a positive urinalysis result twelve hours after the assault occurred because the common date rape drugs

"metabolize in the body very very quickly." He thus would have explained why the negative results did not necessarily indicate whether Allison was drugged.

¶14 The information in the affidavit was accurate, corroborated, and sufficient for a magistrate to determine probable cause. This is the case even if the magistrate had known of the negative urinalysis results. Based on the totality of these circumstances, the omitted information was not critical to a probable cause determination.[3]

¶15 For the forgoing reasons, we reverse the order of the circuit court granting Shock's suppression motion and dismissing the drug charges against him.

*By the Court.*—Order reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[3] Our conclusion that the warrant is sufficient to establish probable cause even considering the omissions is dispositive of all issues raised on appeal. *See*, *e.g.*, **State v. Blalock**, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (stating appellate courts decide cases on the narrowest grounds possible and do not decide issues we need not reach).