*510 ¶ 82.
SHIRLEY S. ABRAHAMSON, J.[1]
The Department of Justice released a lengthy criminal history *511 record for each of the three petitioners, Dennis Teague, Linda Colvin, and Curtis Williams, in response to public criminal history search requests. The Department of Justice concedes, however, that none of the petitioners has a criminal record.[2]
*512 ¶ 83. Nevertheless, the Department of Justice repeatedly characterizes the criminal history records pertaining to the petitioners as accurate. This characterization is baseless, as Justice Kelly's writing explains. See Justice Kelly's writing, ¶¶ 30-35.[3]
¶ 84. The Department of Justice repeatedly refuses to make amends. The three petitioners have come to court seeking forward-looking relief. They present a number of different legal claims, and each claim may lead to a different form of relief.
¶ 85. The relief that Justice Kelly's writing grants is a remand to the circuit court for further judicial proceedings under the petitioners' procedural due process claim.
¶ 86. I would grant the petitioners forward-looking prospective equitable remedy relief under Wis. Stat. § 19.70.[4]
*513 ¶ 87. I would have this court issue a declaratory judgment pursuant to Wis. Stat. § 806.04, the Uniform Declaratory Judgments Act. The declaratory judgment would be affirmative in form and effect, declaring that the Department of Justice must comply with the mandatory requirements of § 19.70 and must hereafter issue correct criminal history records pertaining to these petitioners. See Wis. Stat. § 806.04(1).
¶ 88. The declaratory judgment would also be negative in form and effect. It would include an injunction forbidding the Department from refusing to comply with the mandatory requirements of § 19.70. See Wis. Stat. § 806.04(1).
¶ 89. There are numerous ways that the Department of Justice can comply with such a declaratory judgment. The means of compliance are initially for the Department to determine. The legislature has delegated the creation and administration of the criminal history database to the Department, and the Department has the expertise and institutional capacity to comply with the declaratory judgment and do justice for these petitioners. Such a declaratory judgment enables the Department to work not only with its staff and database experts but also with the petitioners, request-ers of criminal history records, and members of the public interested in technology and privacy to devise solutions.[5]
*514 ¶ 90. If the Department's efforts to correct the inaccuracies in the petitioners' criminal history records fall short, the petitioners may seek further supplementary relief in the Dane County Circuit Court based on this court's declaratory judgment "whenever necessary or proper," pursuant to § 806.04(8).[6]
¶ 91. The Department of Justice's refusal to acknowledge that it is releasing inaccurate criminal history records pertaining to the three petitioners and that it is required to comply with Wis. Stat. § 19.70 stirs a sense of outrage. This sense is evident in Judge Sherman's concurring opinion in the court of appeals, in which he wrote: "[T]he only response of [the Department of Justice] is that it will continue to [release inaccurate records] because there is no law that compels it to do otherwise. In essence, we are doing this to you because we can. That is the response of a bully and not an appropriate response of the government of a democracy."[7]
¶ 92. I shall first set forth the relevant statutes applicable to the instant case. I will then interpret and apply Wis. Stat. § 19.70 to the three petitioners. I *515 conclude that the Department has a judicially enforceable duty to correct the criminal history records pertaining to the petitioners under Wis. Stat. § 19.70. Lastly, I will consider other issues raised by the Department of Justice's alias search policy, the release of inaccurate criminal history records, and the plight of individuals who may unknowingly be harmed by release to the public of inaccurate criminal history records pertaining to them.
I
¶ 93. I first set forth the relevant statutes applicable to the facts in the instant case. The most important statutes to my analysis are Wis. Stat. § 19.70 and the Open Records Law, §§ 19.32-39. I also briefly summarize the statutes authorizing the Department of Justice to compile, retain, and release criminal history records to the public for a fee, to provide context.
¶ 94. I begin with Wis. Stat. § 19.70.[8] This statute is part of Wis. Stat. §§ 19.62-.80, which make up subchapter IV, entitled "Personal Information Practices," of Chapter 19, entitled "General Duties of Public Officials."
¶ 95. Section 19.70 informs my analysis because it requires the Department to correct inaccuracies in records containing personally identifiable information.
¶ 96. When a challenge is made to the accuracy of a record containing personally identifiable informa *516 tion, Wis. Stat. § 19.70, using the word "shall," requires the Department of Justice to take the following action:
• It shall concur with the record subject's challenge and correct the information (§ 19.70(l)(a)); or
• It shall deny the challenge, notify the record subject of the reasons for denying the challenge, and allow the record subject to file a concise statement setting forth the individual's disagreement with the disputed portion of the record (§ 19.70(l)(b)).[9]
¶ 97. Section 19.70 thus provides the means for correcting an inaccurate criminal history record containing personally identifiable information released by the Department of Justice.
¶ 98. Section 19.70 must be read in connection with Wis. Stat. §§ 19.62-.80, the other provisions in subchapter IV, entitled "Personal Information Practices," of Chapter 19.
¶ 99. Section 19.62(5) defines "personally identifiable information."[10] The criminal history records in the instant case indisputably contain personally identifiable information relating to the three petitioners.[11]
| 100. Section 19.67(l)(b) provides that when the Department of Justice "maintains personally identifi *517 able information that may result in an adverse determination about any individual's rights, benefits or privileges [, the Department] shall, to the greatest extent practicable . . . [v]erify the information . . .
¶ 101. I now turn to Wis. Stat. § 19.35. This section also resides in Chapter 19 but is in subchapter II, which is entitled "Public Records and Property" and is popularly known as the Open Records Law. Section 19.35 is referenced in § 19.70.
f 102. Section 19.70 grants an individual (empowered under § 19.35(l)(a) and (am) of the Open Records Law to inspect any record containing the individual's personally identifiable information) the right to challenge the accuracy of a record containing personally identifiable information pertaining to the individual.[12] The petitioners fall within § 19.70's reference to § 19.35.
¶ 103. Finally, I turn to Wis. Stat. §§ 165.82 and 165.83, within Chapter 165, entitled "Department of Justice."
¶ 104. Wisconsin Stat. § 165.83 directs the Department of Justice to maintain a criminal history database. The statute dates back to 1971 and has been amended several times. Law enforcement officers across the state are to provide information to the Department of Justice for the maintenance of the database.
f 105. The criminal history database is maintained for law enforcement and non-law enforcement purposes. With regard to the latter purposes, various state entities are directed by statute or regulation to *518 consult criminal background information on persons who apply for permits, licenses, or employment. See Justice Kelly's writing, ¶ 57. Some statutes direct persons to the Department of Justice for a criminal background investigation;[13] others do not.[14]
¶ 106. Criminal history records compiled under Chapter 165 are made available to the public under the Open Records Law (which I discuss further below). Fees charged to acquire criminal history records under the Open Records Law are governed by Wis. Stat. § 165.82, which was enacted in 1987. This statute provides that, in lieu of the fee imposed in Wis. Stat. § 19.35(3) (imposed on those who receive open records upon request), the Department of Justice shall impose a fee for criminal history searches for purposes unrelated to criminal justice according to the following fee schedule: $7 for each name-based record check; $15 for each fingerprint-based record check; and a $5 surcharge if the person requests a paper copy of the results of a criminal history requested.[15]
¶ 107. Implicit in the directive under Wis. Stat. § 165.83 to the Department to maintain the criminal history database and authority under § 165.82 to charge the public for access to this database and criminal history records derived therefrom is a need for accuracy. If the need for accuracy did not exist, why would the legislature require the Department to maintain the database and charge users for access?
*519 ¶ 108. In sum, the statutes evidence a relationship between the criminal history database, criminal history records derived therefrom, personal information practices, and the Open Records Law. The statutes provide that the Department of Justice releases criminal history records that are compiled under Chapter 165 of the statutes, containing personally identifiable information governed by §§ 19.62-.80, reasoning that they are "records" subject to the Open Records Law.
II
¶ 109. With this background of applicable, relevant statutory provisions in mind, I interpret and apply Wis. Stat. § 19.70, the key statute governing the rights of the petitioners. This statute has not been interpreted by this court or the court of appeals prior to the instant case. Thus the instant case is one of first impression.
¶ 110. The three petitioners complied with the Department's existing process for a record subject to challenge the accuracy of a criminal history record. The process is described on the Department of Justice's website.[16] After each petitioner submitted his or her fingerprints, the Department confirmed that each petitioner had no criminal record and issued an "innocence letter" to each petitioner.[17]
*520 ¶ 111. Nevertheless, the Department's position is that it will continue to adhere to its alias search policy; that it will release a criminal history record for each petitioner each time it runs a new background check on the petitioner; that it will not include in the criminal history record the "innocence letter" or any correction or supplementary information provided by a petitioner; and that it need not and will not inform the requester that the real Teague, Colvin, and Williams have no criminal history.[18]
f 112. The statutes envision that accurate personally identifiable information will be collected, retained, and released by the Department. As explained previously, see ¶¶ 96-97, supra, Wis. Stat. § 19.70 provides a means for providing accurate personally identifiable information.
¶ 113. When a challenge is made to the accuracy of a record containing personally identifiable information, Wis. Stat. § 19.70, using the word "shall," requires the Department of Justice to take the following action:
*521 • It shall concur with the record subject's challenge and correct the information (§ 19.70(l)(a)); or
• It shall deny the challenge, notify the record subject of the reasons for denying the challenge, and allow the record subject to file a concise statement setting forth the individual's disagreement with the disputed portion of the record (§ 19.70(l)(b)).
f 114. Indeed, it appears that in future responses to records requests about these three petitioners, the Department can repair the inaccurate criminal history records with very little difficulty or expense.
¶ 115. Still, the Department has, in effect, refused to comply with Wis. Stat. § 19.70 even though it is fully aware of the inaccuracies in criminal history records pertaining to these petitioners. Indeed, the Department, even in this court, has not explained why it cannot and will not repair any inaccurate criminal history records it releases in the future pertaining to the petitioners.
¶ 116. I conclude, as does Justice Kelly's writing, that the petitioners have successfully demonstrated that Wis. Stat. § 19.70 entitles them to have the inaccuracies corrected in the criminal history records the Department releases in the future. See Justice Kelly's writing, f 35.
¶ 117. As I stated previously, I write separately because I disagree with Justice Kelly's writing that relief under Wis. Stat. § 19.70 "will likely never have anything more than a retroactive effect." See Justice Kelly's writing, f 35.
¶ 118. In contrast, I conclude that a prospective equitable remedy is available to the three petitioners under Wis. Stat. § 19.70. Section 19.70 would be an ineffective, worthless provision unless each of the *522 three petitioners had a remedy under the statute when the Department violated the statute.
f 119. The legislature could not have intended that the Department could violate Wis. Stat. § 19.70 with no consequences. Implicit in § 19.70 is the concept that if the Department does not comply with § 19.70, a court may declare rights under the statute and enjoin the Department from violating the statute.
¶ 120. As I explained previously, I would have this court issue a declaratory judgment pursuant to Wis. Stat. § 806.04, the Uniform Declaratory Judgments Act. The declaratory judgment would be affirmative in form and effect, declaring that the Department of Justice must comply with the mandatory requirements of § 19.70. See Wis. Stat. § 806.04(1).
¶ 121. The declaratory judgment would also be negative in form and effect, enjoining the Department from refusing to comply with the mandatory requirements of Wis. Stat. § 19.70. See Wis. Stat. § 806.04(1).
¶ 122. To obtain injunctive relief, a party must generally show: (1) sufficient probability that future conduct will violate a right and cause injury; (2) that the injury will be irreparable; and (3) that no adequate remedy exists at law for the injury.[19]
f 123. The requirements for injunctive relief are satisfied in the instant case. First, there is a sufficient probability that the Department will not change its conduct of its own accord to correct the inaccuracies that have harmed the petitioners. The petitioners' woes will begin anew whenever the Department releases criminal history records pertaining to these petitioners. The petitioners' names, absent the injunc- *523 tive relief that I conclude this court should order, will continue to be inaccurately associated with a criminal history.
1 124. Second, the injury to the petitioners is irreparable. Every time the Department releases an inaccurate criminal history record, "it is inaccurately suggesting that the [record subject] has a criminal history when, in fact, he does not." See Justice Kelly's writing, f 43. The imposition of such a "specter of criminality" damages the individual's reputation and increases the odds that the individual will lose innumerable opportunities. See Justice Kelly's writing, 1 43. Such an injury has the likelihood of being extremely widespread. The "Wisconsin Criminal History Single Name Record Request" form imposes no limits on who may request a criminal background record, and anyone in the "General Public" may request a background check for "General Information."[20] In 2015, the Department processed about 900,000 "public criminal background check requests." The potential for widespread injury cannot readily be rectified.
¶ 125. Third, no adequate remedy exists at law. Money damages for past or future injury would not curtail the Department's future violations of Wis. Stat. § 19.70 or remedy the injury. Only injunctive relief will prevent the Department from hereafter releasing inaccurate criminal history records pertaining to the petitioners.
f 126. In sum, I would have this court issue a declaratory judgment as I have described.
*524 II
¶ 127. I briefly discuss other issues raised by the Department of Justice's alias search policy, the release of inaccurate criminal history records, and the plight of individuals who may unknowingly be harmed by release to the public of inaccurate criminal history records pertaining to them.
¶ 128. The relief that I would have the court grant in the instant case would be precedent and would be available to all individuals similarly situated to the petitioners. But not all individuals affected by release of criminal history records will be situated similarly to the petitioners.
¶ 129. In the instant case, the three petitioners were aware of the release of inaccurate criminal history records pertaining to them, obtained innocence letters, and requested the Department to correct criminal history records released pertaining to them.
¶ 130. Many individuals, however, may not be aware that they are the victims of the Department of Justice's release of inaccurate criminal history records. These individuals have no opportunity to obtain an innocence letter or to challenge inaccurate criminal history records released to requesters searching their names and birthdates.[21] These individuals would not fall within the relief granted in the instant case.
¶ 131. Neither Wis. Stat. § 19.70, an innocence letter, nor the Wisconsin Unique Personal Identifica *525 tion Number (WiUPIN), each of which puts the onus on the record subject to challenge the criminal history record, aids an individual who does not know of the inaccurate criminal history record pertaining to him or her.
¶ 132. A challenge may very well arise in the future to the Department of Justice's alias search policy in compiling and releasing criminal history records. There is a significant likelihood that as a result of this policy the Department will release an inaccurate criminal history record pertaining to an individual without giving the record subject an opportunity to correct or supplement the record.
¶ 133. The interpretation and application of the statutes relating to the criminal history database, criminal history records, and personally identifiable information may benefit from further attention by the Department of Justice. Further legislative attention may also be needed. See Wis. Stat. § 13.92(2)(j).
f 134. For the reasons set forth, I write separately.
¶ 135. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

 Finally, in the last footnote of his opinion, Justice Kelly *511 points out the schisms on the court in the instant case and their effect.
My separate writing would end the cause in this court. I do not remand the cause to the circuit court for further proceedings. I am not certain from the writings that four justices indisputably conclude that the matter is to be remanded to the circuit court at this time.
Because the court has not always been careful in the past to explain the separate writings in a case and the effect thereof, incorrect references have been made to the first opinion as a lead opinion or to a majority opinion. Indeed, in State v. Lynch, 2016 WI 66, 371 Wis. 2d 1, 885 N.W.2d 89, the first opinion (that was referenced as the lead opinion) was a dissent. For an explanation of the term "lead opinion," see State v. Weber, 2016 WI 96, ¶ 83 n.l, 372 Wis. 2d 202, 887 N.W.2d 554 (Ann Walsh Bradley, J., dissenting).
Because the court has been significantly divided in recent months and has issued numerous separate writings, we should be very careful in each case to explain the effect of the separate writings. For an analysis of this court's split decisions from 1996 to present, see Professor Alan Ball, A Spike in Fractured Decisions, SCOWstats (May 30, 2017), http://www.scowstats. com/2017/05/30/a-spike-in-fractured-decisions/. See also Professor Alan Ball, Wisconsin Supreme Court Statistics, 2015-16: Decisions Arranged by Vote Split, SCOWstats (July 22, 2016), http://www.scowstats.com/wp-content/uploads/2016/ 07/Decisions-by-Vote-Split-2015-16.pdf.

 Each petitioner's name probably came up because the individual with a criminal history used some form of the petitioner's name as an alias. This case involves what is known as an alias search. See Justice Kelly's writing, ¶ 12. The information the Department of Justice provides a requester when the Department uses the alias search may be unreliable, "something the [Department] readily admits." See Justice Kelly's writing, ¶ 7.

 agree with Justice Kelly's writing that we must treat the Department as having issued inaccurate criminal history records pertaining to the petitioners. Any attempt voiced by the Department to avoid this conclusion is unacceptable. Only one conclusion is acceptable: The Department has been knowingly releasing inaccurate criminal history records containing personally identifiable information pertaining to the petitioners.

 Judge Blanchard's writing in the court of appeals denying the petitioners relief under Wis. Stat. § 19.70 was based on the conclusion that the petitioners' request was a request to correct or supplement the database. I agree with Justice Kelly's writing that the petitioners' request was a request to correct the criminal history record, not the database.
Judge Higginbotham and Judge Sherman, writing in the court of appeals, concluded that the relief the petitioners seek under Wis. Stat. § 19.70 is unavailable because the petitioners' argument under § 19.70 for declaratory and injunctive relief was undeveloped in the court of appeals.

 The Department's difficulty with issuing accurate criminal history records apparently results from the algorithm employed by the criminal history database. Justice Kelly's writing, ¶ 6. The use of algorithms in the criminal justice system is being debated. See State v. Loomis, 2016 WI 68, 371 Wis. 2d 235, 881 N.W.2d 749, petition for cert. filed sub nom. Loomis v. Wisconsin, No. 16-6387, 2017WL855946 (Mar. 6, 2017); Jason Tashea, Calculating Crime: Attorneys Are Chal *514 lenging the Use of Algorithms to Help Determine Bail, Sentencing and Parole Decisions, ABA Journal, Mar. 2017, at 54.

 Wisconsin Stat. § 19.356(1), barring individuals from seeking "judicial review," has been referenced and debated by the parties. I do not read this provision as barring judicial relief under § 19.70 regarding correcting or augmenting an inaccurate criminal history record to which a requester is being given access. Nothing about Wis. Stat. § 19.356 or § 19.70 leads a reader to examine § 19.356(1) in interpreting and applying § 19.70. See Justice Kelly's discussion of § 19.356(1) at ¶ 80.

 Teague v. Van Hollen, 2016 WI App 20, ¶ 85, 367 Wis. 2d 547, 877 N.W.2d 379 (Sherman, J., concurring) (emphasis in original).

 Wisconsin Stat. § 19.70 was previously numbered § 19.365 and was part of subchapter II, entitled "Public Records and Property" (the Open Records Law), of Chapter 19. It was recently renumbered § 19.70 and became part of subchap-ter IV, entitled "Personal Information Practices," of Chapter 19. See 2013 Wis. Act 71.

 For the text of Wis. Stat. § 19.70, see Justice Kelly's writing, ¶ 21.

 This same definition is used in the open records law. See Wis. Stat. § 19.32(lr).

 The Department's brief asserts that the criminal history records it released in response to requests seeking the criminal history records of the petitioners do not pertain to the three petitioners. See Brief and Supplemental Appendix of Defendants-Respondents at 41. I agree with Justice Kelly's writing at ¶ 29 that because the records list the petitioners' names, they contain personally identifiable information pertaining to the petitioners.

 Section 19.62 in "Personal Information Practices" explicitly incorporates the definition of "authority" and "records" that appear in § 19.32 of the Open Records Law. See Justice Kelley's writing, ¶ 28 (discussing § 19.62). The Department of Justice is an authority under Wis. Stat. §§ 19.32(1) and 19.62(1).

 See, e.g., Wis. Stat. § 101.985(4).

 See, e.g., Wis. Stat. § 440.445(l)(b).

 In 2015-16, the Department of Justice received $7,280,700 in fees collected under Wis. Stat. § 165.82. See Wisconsin Legislative Fiscal Bureau, Informational Paper 58: State Criminal Justice Functions at 10 (Jan. 2017).

 See Wisconsin Department of Justice, Background Check & Criminal History Information, https://wAvw.doj.state, wi.us/dles/cib/background-check-criminal-history-information.

 During the pendency of this litigation, the Department of Justice has developed what is, in essence, a "new and improved" innocence letter—the Wisconsin Unique Personal Identification Number (WiUPIN). The Department gives a WiUPIN to individuals who have successfully challenged the *520 accuracy of an entry in the Department's criminal history database. Once an individual receives a WiUPIN, the individual may furnish the WiUPIN to whatever organization intends to request a criminal background check on the individual. If the requester includes the WiUPIN, it "will be used in searching potential matching records, so that any arrest and/or conviction record successfully challenged will not be included in a public response." The WiUPIN is available to individuals who have a name similar to a criminal's or have had their name used by a criminal during an arrest. See Wisconsin Department of Justice, Background Check & Criminal History Information, https://www.doj.state.wi.us/dles/ cib/background-check-criminal-history-information.

 The Department relies on its disclaimers to warn the requester that the record subject may be innocent of any criminal violation. I agree with Justice Kelly's writing that the disclaimers are ineffectual and insufficient safeguards in the instant case. See Justice Kelly's writing, f ¶ 45-46.

 See Pure Milk Prods. Co-op. v. Nat'l Farmers Org., 90 Wis. 2d 781, 280 N.W.2d 691 (1979).

 This form and instructions are available on the Department of Justice's website, https://www.doj.state.wi.us/sites/ default/files/dles/cib-forms/record-check-unit/DJ-LE-250-sing-le.pdf.

 The Department requires a name and birthdate to comply with a request for a criminal history record. Although the requester for Teague's criminal history record inaccurately advised the Department of Teague's birth date, the Department nevertheless released the records using Teague as an alias because the Department uses a range of acceptable birthdates.