ANNETTE KINGSLAND ZIEGLER, J. (concurring).
¶ 26 I, of course, join the opinion that I wrote for the majority. I write separately to address issues that three of the four members of the majority conclude are also relevant.
¶ 27 The reviewing circuit court in this case took issue with the manner in which the neighboring circuit court issued the warrant.[1] It concluded that the neighboring court issued this warrant contrary to statutory provisions, that the issuing court did so on a regular basis, that all such warrants were void ab initio, and that, therefore, this case represented "an institutional or administrative disregard for the law governing civil commitments." The reviewing court, thus, suppressed the evidence because of "judicial error on a wide administrative level," concluding that " 'judicial integrity' is vital enough to justify exclusion of evidence when the issuing court's arrest warrant was invalid ab initio."
¶ 28 This case cannot be so easily resolved by relying on the issuing court's alleged statutory violation, because neither the facts of record nor the plain language of the applicable statutes support that conclusion. Relatedly, while it may be tempting to do so, this case cannot be resolved by relying on my concurrence in State v. Hess, 2010 WI 82, 327 Wis. 2d 524, 785 N.W.2d 568, because the arrest warrant was not void ab initio here, where the *797 issuing court had authority to issue it.[2]
¶ 29 Accordingly, I respectfully concur.
I. FACTS OF RECORD
¶ 30 Recall that the record regarding the issuance of the warrant in this case is rather lean. This record reflects that, on June 16, 2015, Kerr was mailed a citation for disorderly conduct, in violation of City of Ashland ordinance 201.03. This citation notified Kerr to appear, if he so chose, at 10:00 a.m. on July 21, 2015. He did not. This record also reflects that, on July 21, 2015, when Kerr failed to appear, the court entered a default judgment in the amount of $263.50 with 60 days to pay, and that on July 31, 2015, the clerk sent notice of the default judgment to Kerr (although neither the judgment nor the notice is in the record). On September 22, 2015, 60 days after default judgment was entered, the circuit court issued an arrest warrant for Kerr to "detain [him] in custody for 90 days or until $298.50 [3 ] is paid, or until the person is discharged by due course of law." This warrant was issued on the basis that "the balance due has not been paid within the period ordered by the court."
¶ 31 There is also very little in the record created by the reviewing court to support its conclusion that the issuing court issued warrants in a similar manner on a regular basis. In fact, the record regarding the review of this singular warrant reflects that it is largely the reviewing court's own opinion and personal belief, rather than fact finding, that this procedure reflects "an institutional or administrative disregard for the law governing civil commitments":
[A]s already known to this Court due to its familiarity with how [the issuing county] issues civil commitments, the error in this case results in several, or dozens or hundreds of arrest warrants being issued in complete disregard for the applicable law.
In isolated cases of judicial malfeasance, exclusion will not likely deter future conduct, as the conduct is often remarkably isolated. Here the conduct is not isolated and may be the rule, not the exception. Deter[r]ence certainly is a greater consideration under these facts. ...
While there is no reason in this case to assume intentional malfeasance on the issuing court, the record from the [issuing county] case shows an institutional or administrative disregard for the law governing civil commitments. While the record does not reflect this, I am administratively aware that [the issuing county] follows the procedure that occurred in this case in almost all of its civil nonpayments. In [the issuing county], nonpayment of a civil forfeiture generally means summary issuance of a civil commitment. There may be hundreds of similar commitments of record.
(Emphasis added.) Additionally, the record reflects that the reviewing court acknowledged *798 that there is not "even the slightest hint of misconduct or wrongdoing by law enforcement in this matter," and that it concluded that the issuing court "had statutory authority to issue a bench warrant under Wis. Stat. § 800.095(1)(b) 1 for Kerr's arrest for failure to pay the fine imposed."
¶ 32 Thus, the reviewing court's decision to suppress the evidence was based solely on its view that the neighboring court issued this warrant without following statutory procedures, that the neighboring court did so on a regular basis, and that, because of that systemic failure, this warrant was "invalid ab initio." This view, however, is not supported by the facts of record; rather, it is based on the reviewing court's own understanding of a neighboring county's practice. Even assuming, however, that there were facts of record to support the reviewing court's conclusion that arrest warrants in civil forfeiture cases were regularly issued in this manner, and that doing so fails to comply with Wis. Stat. § 800.095(1)(b)2.,[4] that procedural defect does not render the warrant "void ab initio."
II. DISTINGUISHING "VOID AB INITIO"
¶ 33 Warrants may be defective for a variety of reasons. Most typically, a warrant is later challenged because of a defect, for example, lack of probable cause or procedural irregularity, but not because it was issued without authority. And warrants are deemed "void ab initio" only when the person issuing the warrant lacks authority to ever issue that warrant in that type of case. Thus, when a judge has the authority to issue a warrant, as is the case here, but fails to properly adhere to prescribed requirements,[5] that warrant may be defective, but it is not void ab initio.
¶ 34 In other words, the type of defective warrant that issues when a judge fails to follow statutory procedural requirements in issuing it differs from the type of defective warrant that issues when a judge lacks authority to issue it: the former, although defective, is not void ab initio; the latter is per se void ab initio. The reality of this distinction is evident from the fact that, if there were no distinction, there would be no place for the exclusionary rule or its companion good-faith exception. In all exclusionary rule cases, the warrant is defective, but nonetheless the evidence discovered in a search incident to arrest is upheld unless there is police misconduct. Notably, the reviewing court stated that there is not "even the slightest hint of misconduct or wrong doing by law enforcement in this matter." Thus, although I assume without deciding that the reviewing court correctly concluded that the warrant was defective, it incorrectly used the term "invalid ab initio" because it is clear from the reviewing court's decision-which concluded that the issuing court "had statutory authority to issue a bench warrant under Wis. Stat. § 800.095(1)(b) 1"-that its grant of Kerr's motion to suppress was based upon the "institutional or administrative disregard for the law governing civil commitments," not a lack of court authority to issue this type of warrant.
A. Authority To Issue
¶ 35 I agree with the reviewing court that the issuing court had the authority to *799 issue this warrant under Wis. Stat. § 800.095. Chapter 753 of the Wisconsin Statutes governs the circuit courts. Under Wis. Stat. § 753.03, "circuit courts have power to hear and determine, within their respective circuits, all civil and criminal actions and proceedings unless exclusive jurisdiction is given to some other court...." § 753.03 (emphasis added); see also Wis. Const. art. VII, § 8 ("Except as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state....").
¶ 36 Chapter 755 of the Wisconsin Statutes governs municipal courts. Under Wis. Stat. § 755.045, a "municipal court has exclusive jurisdiction over an action in which a municipality seeks to impose forfeitures for violations of municipal ordinances of the municipality that operates the court...." § 755.045(1) (emphasis added); see also Wis. Const. art. VII, § 14 ("All municipal courts shall have uniform jurisdiction limited to actions and proceedings arising under ordinances of the municipality in which established.").
¶ 37 Chapter 800 of the Wisconsin Statutes promulgates "Municipal Court Procedure[s]," and where, as here, Wis. Stat. § 800.095 operates to impose a forfeiture for violation of a municipal ordinance, authority to act under § 800.095 would be exclusive to a municipal court if a municipal court has been established under Wis. Stat. § 755.01. See Wis. Stat. § 755.045. However, where, as here, there is no municipal court, the circuit court of the county in which the municipality is located has authority vis-à-vis its general jurisdiction to resolve violations of municipal ordinances pursuant to Chapter 800.
¶ 38 Thus, the reviewing court is correct that (1) "[t]here is no question that the [issuing court], as a court of general jurisdiction, has the constitutional and statutory authority to hear and process municipal citations," and (2) the issuing court "had statutory authority to issue a bench warrant under Wis. Stat. § 800.095(1)(b) 1 for Kerr's arrest for failure to pay the fine imposed."
B. Procedural Defects
¶ 39 The reviewing court errs, however, when it concludes that the warrant here was "invalid ab initio" on the basis that the issuing court issued the warrant in violation of the statutory procedural requirements of Wis. Stat. § 800.095. Kerr, who agrees with this conclusion, and the State, which concedes this point, thus also err. In particular, the State inaccurately cites my concurrence in Hess for the proposition that "[a] warrant can be void ab initio when the judge or magistrate lacked legal authority to issue any warrant, or when a mandatory condition precedent to the court's authority to issue a warrant was not met from the outset." Procedural defects (the latter) are different from lack of authority to issue the warrant in the first instance (the former). To conflate authority to issue with procedural defects is error, and that error is aptly demonstrated in a case where, as here, the alleged defect is procedural in nature, and not related to the issuing court's authority. Again, if lack of authority to issue and procedural defect were both to result in a warrant being deemed void ab initio, the exclusionary rule (and its good-faith exception) would be read out of existence because every exclusionary rule case is analyzed in light of a defective warrant, yet under the exclusionary rule the evidence discovered in a search incident to arrest is not suppressed unless there is police misconduct because the good-faith exception otherwise applies.
*800 1. Hess, 327 Wis. 2d 524, ¶¶ 71-74, 785 N.W.2d 568 (Ziegler, J., concurring)
¶ 40 In Hess, I concurred on the basis that exclusion of the evidence was proper because the warrant was "void ab initio."[6] I cited three cases for the principle that evidence discovered as a result of a warrant void ab initio must be excluded. See Hess, 327 Wis. 2d 524, ¶ 71, 785 N.W.2d 568 (Ziegler, J., concurring) (citing State v. Kriegbaum, 194 Wis. 229, 215 N.W. 896 (1927), State v. Grawien, 123 Wis. 2d 428, 430-31, 367 N.W.2d 816 (Ct. App. 1985), and State v. Loney, 110 Wis. 2d 256, 259-60, 328 N.W.2d 872 (Ct. App. 1982) ). I continue to agree with this principle.
¶ 41 In these three cases, however, the warrant was held void ab initio because the issuing judicial officer lacked authority to issue the warrant in question. See Kriegbaum, 194 Wis. at 231-32, 215 N.W. 896 (concluding that the warrant was void ab initio because justices of the peace "can exercise only the judicial power conferred upon [them] by the statutes" and the statutes did not grant authority "to issue a warrant for the search of a person"); Grawien, 123 Wis. 2d at 430-31, 367 N.W.2d 816 (concluding that the warrant was void ab initio because "the state conceded that [the commissioner] was not authorized to issue search warrants pursuant to sec. 757.69(1)"); Loney, 110 Wis. 2d at 259-60, 328 N.W.2d 872 (concluding that the warrant was void ab initio because the power of the court commissioner to issue warrants, "must be conferred by express delegation" and "the order appointing the commissioner fails to delegate authority to issue warrants"). Here, these cases are inapplicable because, as noted above, see supra ¶¶35-38, the issuing judge in this case had the authority to issue the warrant.
2. Distinguishing authority to act from failure to act
¶ 42 I also noted in my Hess concurrence that "[w]hile a per se void ab initio warrant is always defective, a defective warrant is not always per se void ab initio." 327 Wis. 2d 524, ¶ 73, 785 N.W.2d 568 (Ziegler, J., concurring). As noted above, see supra ¶¶33-34, a warrant issued by someone with authority that is later-found defective for failure to fulfill a requirement such as probable cause, or deficient oath or affirmation-both of which are also requirements for a warrant to issue-does not render the warrant void ab initio and require exclusion of the evidence. Again, this is evident from the fact that, if it did, there would be no need for the exclusionary rule or its companion good-faith exception because every exclusionary rule case involves a defective warrant. Similarly, a warrant that is later-found defective for failure to adhere to statutory procedural requirements does not render the warrant void ab initio. Again, this is evident from the fact that there is a difference between a lack authority to issue and a failure to fulfill procedural requirements.
¶ 43 Thus, while it may be tempting to conclude that this warrant is void ab initio by citing to cases which involved a justice of the peace or court commissioners who had no authority in the first instance to issue the warrant, that line of reasoning is inapplicable because the judge here did have authority to issue the warrant. Compare supra ¶41 (discussing Kriegbaum, 194 Wis. 229, 215 N.W. 896, Grawien, 123 Wis. 2d 428, 367 N.W.2d 816, and Loney, 110 Wis. 2d 256, 328 N.W.2d 872 ) with supra ¶¶35-38. In other words, the warrants in Kriegbaum, Loney, and Grawien were void ab initio because the person who issued *801 the warrant could never issue the warrant under any circumstances, but that is not what we have here.
¶ 44 The difference between failing to comply with the provisions of Wis. Stat. § 800.095(1)(b)2. and lacking authority to issue the warrant is a difference that is significant because Kriegbaum and its progeny stand for the proposition that, when the person issuing the warrant had no authority to do so, that warrant is void ab initio and evidence may be excluded on that basis. See Hess, 327 Wis. 2d 524, ¶ 30, 785 N.W.2d 568 ("[ Loney and Grawien ] together with Kriegbaum, support the conclusion that exclusion is an appropriate remedy where evidence was obtained by a warrant [that] issued by a magistrate who lacked the authority to issue the warrant."); id., ¶29 ("Because the circuit court had no authority to issue the warrant it did, exclusion is an appropriate remedy for evidence obtained as a result of that warrant.").
¶ 45 Here, because the judge did have authority to issue the warrant, the warrant cannot be deemed void ab initio. Instead, the type of defect at issue here is akin to the type of defect that arises when a warrant is challenged post-search or post-arrest and is found to lack probable cause, oath or affirmation, and/or particularity; in those circumstances, the warrant is defective as a result of a judge's failure to adhere to specific requirements before issuing a warrant. Such later-discovered defects do not, however, render the warrant void ab initio.
III. PLAIN LANGUAGE OF THE APPLICABLE STATUTES[7]
¶ 46 As discussed above, see supra ¶31, the reviewing court concluded that the issuing court "failed to comply with the requirements under Wis. Stat. § 800.095(1)(b) 2," and that, therefore, "how [the neighboring county] issues civil commitments ... results in several, or dozens or hundreds of arrest warrants being issued in complete disregard for the applicable law." Because of that "systemic" failure, the reviewing court determined that "[h]ere the conduct is not isolated and may be the rule, not the exception. Deter[r]ence certainly is a greater consideration under these facts." (Emphasis added.) Thus, it suppressed the evidence discovered incident to arrest because " 'judicial integrity' is vital enough to justify exclusion of evidence when the issuing court's arrest warrant was invalid ab initio."
¶ 47 In other words, the circuit court granted Kerr's motion to suppress the evidence discovered incident to arrest because it concluded that there was not just procedural malfeasance with respect to this one warrant, but rather with respect to "several, or dozens or hundreds of arrest warrants," and, therefore, a greater need for deterrence, considering the pervasive *802 systemic nature of the issuance of these warrants in violation of the procedural requirements of the statute. While not fundamental to the conclusion that we reach today, I thus also consider whether the plain language of the applicable statutes supports the strength of the reviewing court's conviction that the issuing court's actions were a violation of the statute.
A. Default Judgment
¶ 48 The reviewing court's conclusion that the issuing court "may have failed to issue or render a written default judgment in 2015" is subject to question. Entry of default judgment in civil forfeiture cases is governed by Wis. Stat. §§ 800.08 and 800.09. Section 800.08 provides, in relevant part, as follows: "If a defendant does not appear at trial, the court may enter a default judgment under s. 800.09." § 800.08(5). Section 800.09 provides, in relevant part, as follows: "If the defendant is not present, the court shall ensure that the information is sent to the defendant by mail." § 800.09(1g).
¶ 49 Here, the parties do not dispute that Kerr did not appear on July 21, 2015; thus, entry of default judgment was proper. See Wis. Stat. § 800.08(5). As noted above, the certified record from the issuing court reflects that default judgment was entered on July 21, 2015. Additionally, the record is completely devoid of any indication that the notice sent on July 31, 2015, was somehow deficient. Consequently, there is nothing in the record to indicate that the notice Kerr presumably received[8] did not properly advise him of the consequences of failure to timely pay or appear, including "imprisonment" and that "the defendant should notify the court if he or she is unable to pay the judgment because of poverty."[9] See Wis. Stat. § 800.09(1g). The reviewing court concluded in fact that the standard default judgment form contained the information required to be given by statute.[10] Thus, there is nothing in the record to support the reviewing court's conclusion that the issuing court "may have failed to issue or render a written default judgment in 2015."
B. Arrest Warrant
¶ 50 The reviewing court's conclusion that the issuing court "failed to comply with the requirements under Wis. Stat. § 800.095(1)(b)2." in issuing the arrest warrant is also subject to question. Issuance of an arrest warrant in civil forfeiture cases is governed by Wis. Stat. § 800.095. Section 800.095 provides, in relevant part, as follows:
(1) If the defendant fails to pay a monetary judgment ordered by the court, the court may order ...
(b) 1. That the defendant be imprisoned until the forfeiture, assessments, surcharge, and costs are paid. If the *803 court orders imprisonment under this subdivision, all of the following apply:
a. The maximum period of imprisonment shall be 90 days for any one judgment, and the defendant shall receive credit against the amount owed at the rate of at least $50 for each day of imprisonment, including imprisonment following an arrest but prior to the court making a finding under subd. 2.
b. The court may impose a term of imprisonment under this subdivision that is either concurrent with or consecutive to any other term of imprisonment imposed at the same time or any term of imprisonment imposed by any court.
2. No defendant may be imprisoned under subd. 1. unless the court makes one of the following findings:
a. Either at sentencing of thereafter, that the defendant has the ability to pay the judgment within a reasonable time. If a defendant meets the criteria in s. 814.29(1)(d), the defendant shall be presumed unable to pay under this subsection and the court shall either suspend or extend payment of the judgment or order community service.
b. The defendant has failed, without good cause, to perform the community service authorized under this subsection or s. 800.09.
c. The defendant has failed to attend an indigency hearing offered by the court to provide the defendant with an opportunity to determine whether he or she has the ability to pay the judgment.
d. The defendant has failed, without good cause, to complete an assessment or treatment program related to alcohol or drugs that was ordered in lieu of a monetary forfeiture.
§ 800.095(1)(b)1.-2.
¶ 51 The plain language of this statute contemplates imprisonment before a subd. (b)2. hearing is held when it states that imprisonment may be imposed up to "90 days for any one judgment, and the defendant shall receive credit against the amount owed at the rate of at least $50 for each day of imprisonment, including imprisonment following an arrest but prior to the court making a finding under subd. 2." § 800.095(1)(b) 1.a. (emphasis added). Thus, while § 800.095(1)(b)2. indeed provides that no defendant may continue to be imprisoned under subd. (b)1. unless the court makes certain findings, subd. (b)1. does seem to permit "imprisonment following an arrest but prior to the court making a finding under subd. 2."
¶ 52 As an initial matter, Kerr has not challenged Wis. Stat. § 800.095(1)(b) 1.a. in any way; rather, Kerr rests his argument on the court's failure to determine his ability to pay the forfeiture imposed prior to arrest. While that may be a good practice, it is less than clear that the statutes require it because, as noted above, see supra ¶¶50-51, this argument is not necessarily borne out by the plain language of the applicable statutes. Additionally, the facts of this case demonstrate precisely why an arrest and/or imprisonment prior to the court making a finding under § 800.095(1)(b)2. may be both necessary and prudent: Kerr was entirely absent. He was never present for the court to ask him whether he could pay the forfeiture, nor did Kerr ever ask for an indigency hearing. Nothing in the record indicates that the notice Kerr presumably received was deficient in so advising him, and, in fact, the reviewing court stated that he received proper notice. See supra ¶49. Thus, the issuing court's ability to resolve the ticket by arrest and/or imprisonment under subd. (b)1., followed by findings under subd. (b)2. is not definitively prohibited. § 800.095(1)(b) 1.a.
*804 ¶ 53 In sum, even if the facts of record demonstrated that the issuing court regularly proceeded in the manner described above, it is not clear that such actions violated the plain language of the applicable statutes. First, entry of default judgment pursuant to Wis. Stat. § 800.09(5) was proper because, although the ticket issued to Kerr did not require his appearance in court, failure to appear at the time designated on the ticket endows the court with authority to enter default judgment. Second, the record reflects that notice of default judgment was sent by mail pursuant to Wis. Stat. § 800.09(1g), and the record is devoid of any indication that the notice might have been lacking; in fact, the court stated that proper notice was given. Third, Kerr's assertion that suppression is warranted because "no hearing was noticed to provide [him] with an opportunity to be heard on the issue of ability to pay prior to the issuance of a warrant" is not clearly supported by the statute; rather, Wis. Stat. § 800.095(1)(b) 1.a. permits "imprisonment following an arrest but prior to the court making a finding under subd. 2." And this might make sense in cases such as this one when no indigency hearing has been requested by the defendant, and, where, at the only court appearance held, the defendant did not appear. In such cases, the statute's language does not appear to always place the onus on the court to set an indigency hearing and ask questions of a non-appearing defendant.[11] It might also make sense to give notice again and set an order to show cause, but the statute is less than clear that that is always required. We need not decide this today, however, as it is not fundamental to our decision.
IV. CONCLUSION
¶ 54 I, of course, join the opinion that I wrote for the majority. I write separately to address issues that three of the four members of the majority conclude are also relevant.
¶ 55 The reviewing circuit court in this case took issue with the manner in which the issuing circuit court issued the warrant. It concluded that the neighboring court issued this warrant contrary to statutory provisions, that the issuing court did so on a regular basis, that all such warrants were void ab initio, and that, therefore, this case represented "an institutional or administrative disregard for the law governing civil commitments." The reviewing court, thus, suppressed the evidence because of "judicial error on a wide administrative level," concluding that " 'judicial integrity' is vital enough to justify exclusion of evidence when the issuing court's arrest warrant was invalid ab initio."
¶ 56 This case cannot be so easily resolved by relying on the issuing court's alleged statutory violation, because neither the plain language of the applicable statutes nor the facts of record support the conclusion that the issuing court acted wrongfully. Relatedly, this case cannot be resolved by relying on my concurrence in Hess, 327 Wis. 2d 524, 785 N.W.2d 568, because the arrest warrant was not void ab initio here, where the issuing court had authority to issue it.
¶ 57 Accordingly, I respectfully concur.
¶ 58 I am authorized to state that Chief Justice PATIENCE DRAKE ROGGENSACK and Justice MICHAEL J. GABLEMAN join this concurrence. I am also authorized to state that Justice DANIEL KELLY joins footnote 2.

State v. Weber, 2016 WI 96, ¶ 141, 372 Wis. 2d 202, 887 N.W.2d 554 (R. Grassl Bradley, J. dissenting).

Relying on federal appellate court decisions, the State asserts that the Exclusionary Rule applies even when a warrant is void ab initio. The United States Supreme Court, however, has not subjected a void ab initio warrant to the exclusionary rule-good faith analysis. This court is "bound on the subject of federal law only by the pronouncements of the United States Supreme Court." State v. Webster, 114 Wis. 2d 418, 426 n.4, 338 N.W.2d 474 (1983). Wisconsin case law requires suppression and it is our state law we should apply.

2010 WI 82, 327 Wis. 2d 524, 785 N.W.2d 568.

Id., ¶¶ 71-73 (Ziegler, J. concurring).

194 Wis. at 232, 215 N.W. 896.

110 Wis. 2d 256, 260, 328 N.W.2d 872 (Ct. App. 1982).

123 Wis. 2d 428, 430-31, 367 N.W.2d 816 (Ct. App. 1985).

Wisconsin Stat. § 800.095 provides that "[n]o defendant may be imprisoned under [Wis. Stat. § 800.095(1) for failure to comply with certain court ordered requirements] unless the court makes one of [four] findings." These include finding that the defendant has the ability to pay the judgment within a reasonable time (subd. para. a.), has failed without good cause to perform required community service (subd. para. b.), has failed to attend an indigency hearing (subd. para. c), or has failed without good cause to complete certain drug or alcohol programs (subd. para. d).

Case law also supports suppression as a sanction when statutes are violated. See, e.g., State v. Renard, 123 Wis. 2d 458, 461, 367 N.W.2d 237 (Ct. App. 1985) ("Suppression of the blood test is an appropriate sanction for failure to comply with [Wis. Stat. §] 343.305(5)"); see also State v. McCrossen, 129 Wis. 2d 277, 286-97, 385 N.W.2d 161 (1986) (discussing sanctions including suppression arising from due process violations).